**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| HERIBERTO HERRERA TORRALBA, *et al.*, | Case No. 2:25-cv-01366-RFB-DJA |
| Petitioner, | **ORDER** |
| v. | |
| JASON KNIGHT, *et al.*, | |
| Respondents. | |

Before the Court is the (ECF No. 17) First Amended Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 by Petitioners Heriberto Herrera Torralba, Gaudencio Dominguez Castillo, and Jose Vazquez Jacobo (collectively Respondents). For the following reasons, the Court grants the Petition.

I.    **PROCEDURAL HISTORY**

The Court recounts the following history of proceedings in this Court.

On July 28, 2025, Petitioners Heriberto Herrera Torralba and Gaudencio Dominguez Castillo filed their 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Jason Knight, John Mattos, Kristi Noem, Pamela Bondi, and the Executive Office for Immigration Review. ECF No. 5. On August 1, 2025, the Court conducted a preliminary review of the Petition and directed service on the Respondents, with their response due within seven days. ECF No. 10. On August 6, Petitioners filed a supplement to the Petition. ECF No. 11.

On August 7, 2025, Respondents sought additional time to respond, based on counsel's

claim they were awaiting information regarding Petitioners' detention from Immigration and Customs Enforcement ("ICE"). ECF No. 13. Petitioners opposed the extension. ECF No 14. On August 11, 2025, the Court, having further reviewed the Petition, granted Petitioners leave to amend to further clarify their due process challenge to the Department of Homeland Security ("DHS") and ICE's invocation of 8 C.F.R. § 1003.19(i)(2)—i.e., filing a Form EOIR-43 to effect a unilateral and automatic stay of the Immigration Judges' ("IJs") orders authorizing the release of Petitioners on bond, pending DHS/ICE's appeal of the IJs' orders to the Board of Immigration Appeals ("BIA"). ECF No. 16. On August 13, 2025, Petitioners filed the instant First Amended Petition, which added Petitioner Jose Vazquez Jacobo. ECF No. 17. On August 25, 2025, Respondents filed their Answer to the petition. ECF No. 21. On August 29, 2025, Petitioners filed their reply. ECF No. 25.

The morning of September 2, 2025, Petitioners' counsel filed a letter notifying the Court of relevant supplemental authorities. ECF No. 26. That morning the Court held a hearing on the First Amended Petition, heard arguments from the Parties, and instructed both Parties to supplement the record with information regarding: Petitioners' case dockets in immigration court, Respondents filings associated with the automatic stay, and a certification of ICE Chief Counsel regarding the justification for the stay and appeal as to each Petitioner. Counsel for the Respondents represented to the Court that the certifications existed and would be provided to the Court. See ECF No. 28. Petitioners supplemented the record as ordered, see ECF No. 27, however, Respondents did not. As of writing, Respondents have provided no evidence of the mandated certification by an ICE/DHS official, as required by 8 C.F.R. § 1003.19(i)(2) to invoke the automatic stay.

The Court issued a ruling from the bench and via the Minutes of Proceedings, with the instant written Order to follow, finding the 8 C.F.R. § 1003.19(i)(2) automatic stay unconstitutional as to Petitioners' procedural due process rights under the Fifth Amendment, both facially and as applied, and ordering Petitioners be released from ICE custody on bond consistent with the orders of the IJs as to each Petitioner by 5 p.m. that day. See ECF No. 28. The Court set a 1 p.m. deadline for Respondents to file a motion to stay the order pending appeal, which passed

without any filing by Respondents. Id. After 5 p.m., the Court received information from Petitioners' counsel that Petitioners Guadencio Dominguez Castillo and Jose Vazquez Jacobo had been unable to pay their bonds through ICE's electronic payment system due to technical issues beyond their control, which could not be resolved outside of business hours, such that they would not be able to pay their bonds until September 3, 2025. See ECF No. 29. Due to the technical issues preventing bond payment, the Court ordered all Petitioners be released *immediately*, with a deadline to satisfy their bond conditions by September 5, 2025, and ordered Respondents to file a notice of compliance, once release had been effectuated. Id. Later that evening, Respondents filed a notice of compliance confirming that Petitioners were released from detention at approximately 8:46 p.m. ECF No. 30.

The Court's written Order on the First Amended Petition follows.

## II.    IMMIGRATION PROCEEDINGS BACKGROUND

The Court sets forth the following statutory, regulatory, and procedural background relevant to Petitioners' proceedings in immigration court. The Court's findings are based upon the record in this case.

Petitioners are residents of Utah who were recently arrested by ICE and moved to Nevada for detention at the Nevada Southern Detention Center. Petitioners are charged with, *inter alia*, having entered the United States without inspection. 8 U.S.C § 1182(a)(6)(A)(i). Petitioners remain detained pending ongoing 8 U.S.C. § 1229(a) immigration proceedings. No order of removal has been issued as to any Petitioner.

After being arrested and detained, each Petitioner here sought a custody redetermination from an IJ and was provided a bond hearing, wherein the IJ found they had jurisdiction pursuant to Section 126(a) of the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1226(a). At the bond hearings, DHS presented no evidence relevant to the bond determination but instead argued Petitioners' cases should be dismissed because they were subject to mandatory detention under Section 125(b)(2)(A) of the INA, rather than Section 126. See 8 U.S.C. § 1225(b)(2)(A). In each Petitioners' case, the IJs rejected DHS/ICE's argument, found they had jurisdiction to redetermine

Petitioners' custody under § 1226, and ordered each Petitioner released on bond. Subsequently, DHS/ICE exercised its authority under 8 C.F.R. § 1003.19(i)(2) to unilaterally and automatically stay the IJ's bond determinations, pending DHS' appeal to the BIA. It is pursuant to that automatic stay, commenced by DHS/ICE's filing of a Form EOIR-43 and notice of intent to appeal the IJ's custody redetermination as to each Petitioner with the immigration court, that Respondents allegedly continued to detain Petitioners.

### A. DHS New Mandatory Detention Policy Effective July 8, 2025

On July 8, 2025, DHS instituted a notice entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission" to all ICE Employees.[1] The Notice indicated that DHS, in coordination with the Department of Justice, "revisited its legal position" on the INA and determined that Section 235, rather than Section 236, is the applicable immigration authority for any alien present in the United States "who has not been admitted. . . whether or not at a designated port of arrival."[2] Accordingly, "it is the position of DHS that such aliens are subject to [mandatory] detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole."[3] The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."[4]

In sum, this change in policy by DHS requires ICE employees to deem anyone arrested in the United States and charged with being inadmissible as an "applicant for admission" under Section 235(b) of the INA (8 U.S.C. § 1225(b)(2)). Such a determination subjects the individual to mandatory detention during removal proceedings under 8 U.S.C. § 1229(a) and deprives them

---

[1] According to Petitioners, the memo was leaked to the American Immigration Lawyers Association ("AILA"). See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX. Respondents do not contest the authenticity of this screenshot.

[2] Id.

[3] Id.

[4] Id.

of the due process protections under Section 236(a) (8 U.S.C. § 1226(a)), which include entitlement to a bond hearing by an IJ at the outset of their detention, unless they have been arrested, charged with, or convicted of certain crimes that require mandatory detention under 8 U.S.C. § 1226(c). See 8 C.F.R. §§ 1003.19(a), 1236.1(d).

### B.  DHS' Automatic Stay Pursuant to 8 C.F.R. §1003.19(i)(2)

Prior to 2001, detainees subject to discretionary detention under 8 U.S.C. § 1226(a) who were granted bond by an IJ remained detained only if the BIA granted a request to stay the bond order. See 8 C.F.R. § 1003.19(i)(2) (1998) (permitting the use of automatic stays only where the noncitizen was subject to a mandatory detention statute). In 2001, the Immigration and Naturalization Service (now DHS) implemented an interim rule to expand its authority to issue automatic stays of IJs' custody decisions pending their appeal. See Executive Office for Immigration Review (EOIR), Review of Custody Determination, 66 Fed. Reg. 54909, 54910 (Oct. 31, 2001). The INS emphasized that the stay was "a limited measure," to be used only "where the Service determines that it is necessary to invoke the special stay procedure pending appeal." Id.

In the early 2000s, several federal courts concluded the automatic stay provision violated the due process rights of detainees. See Zavala v. Ridge, 310 F. Supp. 2d 1071 (N.D. Cal. 2004) (finding that continued detention pursuant to the automatic stay despite the IJ's decision to grant bond violated procedural and substantive due process rights); Bezmen v. Ashcroft, 245 F. Supp. 2d 446 (D. Conn. 2003) (finding the government goal of preventing the release of noncitizens posing a threat to national security was not served by the petitioner's ongoing detention and was outweighed by the petitioner's Fifth Amendment right to be free from detention); Zabadi v. Chertoff, No. 05-CV-1796 (WHA), 2005 WL1514122 (N.D. Cal. June 17, 2005) (finding the automatic stay provision unconstitutional); Uritsky v. Ridge, 286 F. Supp. 2d 842 (E.D. Mich. 2003) (same).

In 2006, the EOIR promulgated the final and current rule, which added the requirement that any decision to invoke the automatic stay must be made by the Secretary of DHS, who must certify that sufficient factual *and* legal bases exist to justify continued detention ("the Certification Requirement"), which was added "to allay possible concerns that in some case the automatic stay

1    might be invoked . . . without an adequate factual or legal basis." <u>See</u> Executive Office for

2    Immigration Review, <u>Review of Custody Determination</u>, 71 Fed. Reg. 57873, 57876 (Oct. 2,

3    2006); 8 C.F.R. § 1003.6(c). The Rule also imposed some limitations by providing that the

4    automatic stay will lapse 90 days after filing the bond appeal if the BIA has not acted, unless DHS

5    seeks a discretionary stay pursuant 8 C.F.R. § 1003.19(i)(1), which requires approval from the

6    BIA. <u>See</u> 8 C.F.R. § 1003.6(c)(4). The regulation also sets forth a procedure by which DHS may

7    request an emergency stay of an IJ's custody determination from the BIA, which initiates expedited

8    preliminary review by the BIA to determine whether a stay is warranted based on the individual

9    circumstances of the detainee and the merits of DHS's appeal. <u>See</u> 8 C.F.R. § 1003.19(i)(1).

10    **C.  Petitioners' Immigration Proceedings**

11    The Court makes the following findings of fact relevant to Petitioners' arrest and detention

12    and the relevant proceedings in immigration court based on the First Amended Petition and

13    documents on the record, including the bond memoranda of the IJs, and print outs of the

14    immigration court dockets accessible by Petitioners' counsel in the immigration court proceedings.

15    The Court notes the only specific information provided by Respondents as to Petitioners and the

16    reasons for their continued detention are the "Notice of Intent to Appeal Custody Redetermination"

17    forms and appeal filing receipts for Petitioners Heriberto Herrera Torralba and Gaudencio

18    Dominguez-Castillo. Respondents' counsel indicates the appropriate forms regarding ICE's appeal

19    of Jose Vazques Jacobo's custody redetermination were timely filed and would be supplemented

20    in the record. At the hearing on the Petition, counsel for Respondents represented they had physical

21    copies of these documents on hand, and the Court ordered Respondents to supplement the record

22    accordingly. To date, <u>Respondents have yet to provide these documents</u>.

23    Here, each Petitioner successfully established at their bond hearings by clear and

24    convincing evidence that they were neither a danger to the community nor a flight risk. <u>See</u> <u>Matter</u>

25    <u>of Guerra</u>, 24 I&N Dec. 37, 40 (BIA 2006); 8 C.F.R. § 1236.1(c)(3) (setting forth a noncitizen

26    detainee's evidentiary burden to be released on bond). DHS/ICE invoked the unilateral automatic

27    stay pending appeal of the IJs bond decisions regarding each Petitioner pursuant to 8 C.F.R.

28    §1003.19(i)(2).

Respondents assert the statutory argument that § 1225(b)(2), rather than § 1226(a), applies to Petitioners, consistent with the DHS Guidance Notice and the arguments DHS/ICE made before the IJs, and justifies the stay pending appeal of the bond release orders as to each Petitioner. However, Respondents have not, as of writing, presented any evidence to this Court that that the Secretary of DHS has certified that sufficient factual and legal bases exist to justify the continued detention of these Petitioners, as required under 8 C.F.R. § 1003.19(i)(2). At the hearing on the instant Petition, after leaving the courtroom to contact ICE regarding this issue, Respondents' counsel indicated that such a certification made by ICE's chief counsel exists as to each Petitioner, and that Respondents would supplement the record with the relevant documents once received from ICE. The Court ordered Respondents to supplement the record as soon as possible that day, September 2, 2025. Respondents failed to supplement the record with evidence of their compliance with the Certification Requirement as ordered.

### D. The Individual Petitioners

#### i. *Heriberto Herrera Torralba*

Heriberto Herrera Torralba (Mr. Herrera) is a 51-year-old citizen of Mexico who has resided in the United States without departure since 1995. He is married and has four U.S. citizen children, ages 25, 20, 16, and 13. His 25-year-old son works for the Sherriff's Office, his 20-year-old is on active duty in the U.S. Air force, and his 16-year-old is being treated for Cerebellar Neoplasm and Obstructive Hydrocephalus, recently had brain surgery, and requires regular follow-up treatment.

Mr. Herrera was arrested by ICE in Salt Lake City on July 10, 2025. Days before his arrest, he applied to U.S. Citizenship & Immigration Services ("UCSIC") For Military Parole in Place, a process that allows applicants with children in the military to apply for lawful permanent residence. That application is currently pending.

ICE was looking for Mr. Herrera because he had been granted voluntary departure by an IJ in 1990, and ICE did not have evidence that he had departed on time which, if true, would have converted the voluntary departure to a deportation order. Mr. Herrera had documentation of his voluntary departure in 1990, which prevented ICE from deporting him under the 1990 order.

Instead, ICE placed Mr. Herrera in newly commenced removal proceedings pursuant to 8 U.S.C. § 1229(a) and issued a custody determination to continue his detention without an opportunity to post bond or be released on other conditions.

On July 15, 2025, Mr. Herrera sought review of his custody by an IJ through a bond redetermination request. On July 18, 2025, a bond hearing was held, wherein DHS/ICE presented no evidence regarding Mr. Herrera's detention, but argued he is an "applicant for admission" who is "seeking admission" and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), consistent with the DHS Guidance Notice. The IJ made the initial determination that, because Mr. Herrera was apprehended deep inside the continental U.S. (over 100 miles from the nearest land border), and had been in the U.S. for 30 years when apprehended, and § 1225(b)(2) sets forth a screening and referral process for "applicants for admission" that only applies to aliens who have not been present continuously for at least a two year period prior to the determination of inadmissibility, § 1226, not § 1225, applies to Mr. Herrera. The IJ proceeded to consider the evidence presented, including Mr. Herrera's clean criminal record, significant family, financial, and community ties to the U.S., eligibility for cancellation of removal, and pending application for lawful residency. The IJ found that Mr. Herrera met his burden to show he was neither a danger to the community nor a flight risk. The IJ granted a bond at the lowest possible amount of $1,500.

The same day, July 18, 2025, counsel for ICE filed an EOIR-43 Form and initiated the automatic stay of the IJ's custody redetermination decision pursuant to 8 C.F.R. § 1003.19(i)(2). The appeal was filed by DHS on August 1, 2025, and the IJ issued a memorandum decision regarding the bond order on August 13, 2025.

### ii. *Gaudencio Dominguez Castillo*

Gaudencio Dominguez Castillo (Mr. Dominguez) is a 33-year-old noncitizen who has resided in the U.S. since 2010. He is employed. During the 15 years he has been present in the U.S., he was cited for one traffic offense over 8 years ago. He is married to a U.S. citizen who has been abusive. He has an application under the Violence Against Women Act for an immigration benefit that has been pending before U.S. Citizenship & Immigration Services since 2022. He was arrested in West Jordan, Utah, with an administrative warrant, following a routine vehicle stop on

1    July 7, 2025, and turned over to ICE.

2    On July 16, 2025, Mr. Dominguez sought review of his custody by an IJ through a bond

3    redetermination request. The IJ addressed and rejected DHS/ICE's argument that Mr. Dominguez

4    was subject to mandatory detention under § 1225, finding it was unsupported by the law, including

5    the plain language of the relevant INA Sections 235 and 236. The IJ noted that Section 235, read

6    as a whole, mandates that to be considered an "applicant for admission" under that section, an

7    alien must either be (1) arriving in the U.S. or (2) physically present in the U.S. without admission

8    or parole for a period less than the two-year period immediately preceding the determination of

9    inadmissibility. The IJ noted "the DHS's proposed expansion of § 235 would render § 236

10   meaningless and would contravene the Supreme Court's interpretation of the functions of these

11   separate sections." ECF No. 17-1 at 17. Based on Mr. Dominguez's presence in the U.S. for over

12   two years, apprehension far from a port of entry, and arrest with an administrative warrant, the IJ

13   found he is not an "applicant for admission" under § 235 and  could only be detained under § 236.

14   The IJ further found that Mr. Dominguez met his burden to show that he was neither a danger to

15   the community or a flight risk and granted bond in the lowest possible amount of $1,500.

16   The same day, July 22, 2025, counsel for ICE filed a EOIR-43 Form and initiated the

17   automatic stay of the IJ's custody redetermination decision pursuant to 8 C.F.R. § 1003.19(i)(2).

18   On August 1, 2025, DHS filed an appeal to the BIA. On August 8, 2025, the IJ issued a

19   memorandum regarding the bond decision.

20        iii.   *Jose Vazquez Jacobo*

21   Mr. Vazquez is a 34-year-old non-citizen who has resided in the U.S. for more than 18

22   years. He lives with the mother of his two U.S. citizen children, ages 11 and 16, the youngest of

23   whom has Down Syndrome. Mr. Vazquez is the sole provider in his home because his partner

24   stays at home full time to care for their children, especially their youngest who requires special

25   care due to his disability. He has not been convicted of any crimes. He was recently arrested for

26   the first time for a DUI and driving without a license on June 28, 2025. After the state court

27   conducted a Public Safety Assessment and found him to be of low risk to the community, he was

28   released on his own recognizance and subsequently detained by ICE.

1          On August 6, 2025, Mr. Vazquez sought review of his custody by an IJ through a bond

2    redetermination request. A bond hearing was held on August 13, 2025. The IJ found that since Mr.

3    Vazquez entered the U.S. in 2007, was not a recent entrant within the past two years, and was not

4    apprehended near the border, the IJ had jurisdiction under section 236(a) of the INA to issue a

5    bond determination. ECF No. 17-1 at 25 (citing <u>Matter of Q Li</u>, 29 I&N Dec. 66 (BIA 2025);

6    <u>Vazquez v. Bostock</u>, Case No. 3:25-cv-054240-TMC (W.D. Wash. 2022)). The IJ further

7    considered the evidence of Mr. Vazquez's family ties and *prima facie* claim for cancellation of

8    removal. While the IJ expressed concern about his criminal charges, the IJ recognized the criminal

9    proceedings were ongoing, and Mr. Vazquez agreed as a condition of his bond that he would not

10   drive for any reason until he obtained a valid driver's license, ameliorating any danger he posed to

11   the community. The IJ issued a bond of $2,000. On August 14, 2025, based on the docket printout

12   provided by Petitioner's counsel, an EOIR-43 Form was filed, initiating the automatic stay of the

13   IJ's custody redetermination decision pursuant to 8 C.F.R. § 1003.19(i)(2). <u>See</u> ECF No. 27. The

14   Court does not have evidence on the record that Respondents filed their appeal to the BIA.

15

16   **III.    LEGAL STANDARD**

17       **A.  § 2241 Petition for Writ of Habeas Corpus**

18         The Constitution guarantees that the writ of habeas corpus is "available to every individual

19   detained within the United States." <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 525 (2004) (citing U.S.

20   Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon

21   the legality of that custody, and . . . the traditional function of the writ is to secure release from

22   illegal custody." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be

23   granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or

24   federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means

25   of reviewing the legality of Executive detention, and it is in that context that its protections have

26   been strongest." <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas

27   jurisdiction includes challenges to immigration-related detention. <u>Zadvydas v. Davis</u>, 533 U.S.

28   678, 687 (2001); <u>see also</u> <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003).

1    Habeas corpus is "perhaps the most important writ known to the constitutional law . . .

2    affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement."

3    Fay v. Noia, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and

4    displaces the calendar of the judge or justice who entertains it and receives prompt action from

5    him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir.

6    2000) (citation omitted). Respondents characterize the First Amended Petition as seeking

7    "temporary injunctive relief, by ordering their release from . . . custody while DHS' appeals on

8    their bonds are pending before the Board of Immigration Appeals" and argue the Court should

9    apply the standard governing preliminary injunctive relief. ECF No. 21 at 1. However, Petitioners

10    have not sought preliminary injunctive relief—they seek a ruling on the merits of their Petition,

11    which requires expedited review. Accordingly, this Order rules on the merits of the First Amended

12    Petition, and the factors under Winter v. Nat. Res. Def. Council, Inc., 550 U.S. 7 (2008), are not

13    relevant here.

14

15    **IV.    DISCUSSION**

16    As an initial matter, the Court notes Respondents fail to substantively address Petitioners'

17    due process challenge to the automatic stay under 8 C.F.R. § 1003.19(i)(2), which is the sole

18    authority enabling Petitioners continued detention despite the IJ's orders that they be released on

19    bond. Instead, Respondents characterize the First Amended Petition as seeking preliminary

20    injunctive relief while the BIA rules on the merits of DHS's appeal claim that 8 U.S.C. § 1225,

21    rather than § 1226, applies to Petitioners, and Respondents insist that such relief is not warranted

22    because DHS is likely to succeed on the merits of its appeal. Respondents further argue the doctrine

23    of administrative exhaustion forecloses Petitioners' release until the BIA rules on DHS' pending

24    appeals. The Court addresses these arguments before turning to Petitioners' due process challenge,

25    which Respondents have effectively conceded.

26    First, the Court finds at this juncture that Petitioners continued detention presents the

27    narrow question of the lawfulness of DHS' invocation of the automatic stay pursuant to 8 C.F.R.

28    §1003.19(i)(2), and thus the Court declines to decide at this time the merits of DHS's statutory

argument or its likelihood of success before the BIA. That is because the *status quo* is that the IJs have already considered DHS' assertion that § 1225(b), rather than § 1226(a), applies to Petitioners and found it meritless. Petitioners were already ordered to be released. This Court therefore need not intervene in the administrative appellate process to order Petitioners be released from detention subject to the conditions imposed by the IJs, because the narrow issue before the Court in its habeas jurisdiction is whether Section 1003.19(i)(2) provides authority for Respondents to unilaterally and without a hearing detain Petitioners after they have been granted release pursuant to a bond by a duly appointed IJ.[5] The Court thus turns to Respondents' argument regarding administrative exhaustion, before addressing Petitioners' due process challenge to their continued detention pursuant to 8 C.F.R. § 1003.19(i)(2).

## A. Administrative Exhaustion

Respondents' argument that this Court lacks subject matter jurisdiction due to Petitioners' failure to exhaust their administrative remedies is unavailing. "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." Laing v. Ashcroft, 370 F.3d 994,

---

[5] The Court nevertheless notes the IJs' rulings are consistent with the decisions of federal district courts within the Ninth Circuit and across the country that have thus far considered and rejected DHS' novel interpretation of sections § 1225 and § 1226. See e.g., Lazaro Maldonado Bautista v. Ernesto Santacruz Jr, Case No. 5:25-cv-01873-SSS-BFM, ECF No. 14 at pgs. 7-8 (C.D. Cal. July 28, 2025) (holding respondents failed to articulate any valid justification, legal or otherwise, for the application of § 1225 rather than § 1226 to the petitioners); Rodriguez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025) (finding that the text of § 1226, canons of statutory interpretation, legislative history, and longstanding agency practice indicate that § 1226, not § 1225(b)(2), applies to noncitizens arrested while living in the U.S.); Ceja Gonzalez v. Noem, No 5:25-cv-02054-ODW (C.D. Cal. Aug. 13, 2025) (rejecting the respondents' interpretation of § 1225(b) based on the statutory text); Rosado v. Figueroa, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025), report and recommendation adopted *sub nom*. Rocha Rosado v. Figueroa, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) (same); Martinez v. Hyde, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025) (holding DHS's selective reading of section 1225—which ignores its "seeking admission" language—violates the rule against surplusage and negates the plain meaning of the text); Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) (holding that accepting DHS's "one-size-fits-all application of § 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction" . . . and "render § 1226 utterly superfluous" and that the "Laken Riley Act amendments to § 1226(c), the legislative history of the IIRIRA, and longstanding practice supports this holding."); Lopez Benitez v. Francis, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (holding a proper understanding of the relevant statutes, in light of their plain text, and uniform case law interpreting them, compels the conclusion that § 1225 does not apply to a noncitizen who has been residing in the U.S. for more than two years).

998 (9th Cir. 2004). Neither the habeas statute § 2241 nor the relevant sections of the INS require petitioners to exhaust administrative remedies before filing petitions for habeas corpus. See id. (citing Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001). Therefore, Respondents are incorrect that exhaustion is jurisdictionally required. Rather, this Court must instead determine whether exhaustion is required as a prudential matter. See id. A court may require prudential exhaustion if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007).

Under these factors, the Court finds it would be nonsensical to hold that Petitioners are required to await the BIA's resolution of DHS's appeal under the doctrine of prudential exhaustion. Petitioners *have* exhausted their administrative remedies—they sought review of their custody from IJs pursuant to the procedural protections they are afforded under § 1226(a) and successfully established by clear and convincing evidence that they should be released on bond. As noted, the Petitioners were already granted release from detention by the IJ. Their Petition simply asks this Court to enforce the IJs' bond orders. Requiring Petitioners to appeal to the BIA to *affirm* the IJ orders that they contend were legally correct runs contrary to the very notion of an 'appeal.' In other words, it is Respondents, not Petitioners, who claim that the administrative scheme produced a mistaken outcome. The policies underlying the doctrine of prudential exhaustion are thus not implicated here.

Additionally, the Court finds that there is no mechanism to seek administrative review of the constitutionality and application of DHS's automatic stay via C.F.R. § 1003.19(i)(2), so exhaustion would be futile. The regulation on its face allows for at least 90 days of unreviewable detention. By the time the BIA resolves DHS's appeal, which Petitioners assert can take ten or more months even if the BIA ultimately finds DHS's legal argument meritless and denies the appeals, Petitioners will have been subject to an extended and unlawful detention with no remedy. To the extent exhaustion was required and procedurally possible (which it is not), this matter falls

squarely into the futility exception to the exhaustion requirement "carved for constitutional challenges to . . . [DHS] procedures." <u>Iraheta-Martinez v. Garland</u>, 12 F.4th 942, 949 (9th Cir. 2021) (quoting <u>Sola v. Holder</u>, 720 F.3d 1134, 1135 (9th Cir. 2013) (*per curiam*) (alterations in original)). Because Petitioners assert that the automatic stay runs afoul of their due process rights, and their constitutional challenge is necessarily beyond the scope of the BIA's review, prudential administrative exhaustion—to the extent it should apply where Respondents, not Petitioners, are asserting the IJs decisions were erroneous—is excused as futile.

### B. Due Process

Petitioners raise both a procedural and substantive due process challenge to their continued detention pursuant to DHS's invocation of the automatic stay under 8 C.F.R. § 1003.19(i)(2), both facially and as applied.

A constitutional due process challenge can be either facial, as applied, or both. <u>See</u> <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1203 (9th Cir. 2022). Petitioners raise both a facial and an as-applied challenge to 8 C.F.R. § 1003.19(i)(2). A facial challenge is "a claim that the legislature [or administrative agency] has violated the Constitution" meaning that "the plaintiff must show that no set of circumstances exists under which the statute would be valid." <u>Id.</u> (internal quotation and citations omitted). "An as-applied challenge, meanwhile, 'focuses on the statute's [or regulation's] application to the plaintiff' and requires the court to only assess the circumstances of the case at hand." <u>Id.</u> (quoting <u>Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.</u>, 979 F.3d 1209, 1217 (9th Cir. 2020). Regardless of the type of challenge, however, the underlying constitutional standard remains the same. <u>Regino v. Staley</u>, 133 F.4th 951, 967 (9th Cir. 2025) (citing <u>Legal Aid Servs. of Or. v. Legal Servs. Corp.</u>, 608 F.3d 1084, 1096 (9th Cir. 2010)).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. <u>See</u> U.S. CONST., amend. V. There is no question that these protections extend to noncitizens present in the United States. <u>See e.g.</u>, <u>Trump v. J.G.G.</u>, 604 U. S. ___, 145 S. Ct. 1003, 1006 (2025) (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings . . .") (quoting <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993)); <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693, (2001) ("[T]he Due Process Clause applies to

all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) (holding the "Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process, meaning "notice and opportunity to be heard 'appropriate to the nature of the case.'" J.G.G., 145 S.Ct. at 1006; see also A. A. R. P. v. Trump, 145 S. Ct. 1364, 1367 (2025). Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Mathews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino, 133 F.4th at 959–60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno, 507 U.S. at 302. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. Substantive due process thus protects noncitizens from arbitrary Government confinement, which violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana,

1    504 U.S. 71, 80 (1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997).

2                    **i.  *Procedural Due Process***

3           As a threshold matter, the Court observes that Respondents assert no argument regarding

4    the procedural question presented by the Petition: whether a regulation can permit an agency

5    official to unilaterally detain a person after a judge has ordered the person's release. The only

6    reference to Petitioners' due process challenge in Respondents' answer is "there is no violation of

7    the Petitioners' due process rights, as they were given a bond hearing." ECF No. 21 at 2.

8           Respondent's argument misses the point and the disputed process entirely. Respondents

9    require authority for two separate acts of detention—both of which require valid authority and due

10   process. The initial detention of Petitioners was authorized pursuant to ICE's authority to seize or

11   detain individuals based upon ICE's determination that they are not lawfully in the United States.

12   8 U.S.C. §§ 1226, 1225, 1229a. However, once petitioners were detained, they had the right under

13   8 C.F.R. § 1003.19(e), which they invoked, to seek a custody redetermination after this initial

14   seizure. Petitioners secured their release based upon a decision of the IJ who set bond conditions

15   for their release. Prior to their release, ICE then effected a second detention pursuant to the

16   automatic stay under 8 C.F.R. § 1003.19(i)(2). Thus, Respondents' argument elides the fact that

17   there are two separate acts of detention, asserting instead that the authority and process for the first

18   detention necessarily includes the second. The application of the automatic stay is itself a separate

19   act of detention that must also satisfy due process. It is this latter detention and its legality which

20   is the focus of the Court's habeas inquiry here.

21          The Court thus proceeds to its procedural due process analysis under Matthews.

22                  1.   The Private Interest

23          The first Mathews factor considers the private interest affected by DHS' invocation of the

24   automatic stay. See Mathews, 424 U.S. at 335. Here, that is Respondents' interest in being free

25   from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this

26   country liberty is the norm and detention "is the carefully limited exception." United States v.

27   Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's

28   private interest in freedom from prolonged detention is unquestionably substantial.") (citations

omitted).        The Court finds the automatic stay necessarily always infringes on a noncitizen's fundamental right to freedom from Government detention, and therefore, in terms of both the facial and as applied procedural due process challenge, this factor weighs heavily against the Government. Petitioners' as applied challenge is further bolstered by the individualized harms attendant to their incarceration—including being separated from their families, which in two cases includes minor children who require specialized medical treatment and care, their employment and ability to earn an income (in one case as the sole provider for their family), and their deep community ties based on their decades of residence in the United States. Moreover, Petitioners assert that their detention makes it difficult for them to access counsel and prepare for their ongoing removal proceedings. Petitioners have thus clearly established that the first Mathews factor strongly favors granting the Petition.

### 2.   The Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioners'] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This Court finds the automatic stay provision creates an extreme risk of erroneous and arbitrary confinement. See e.g., Günaydin v. Trump, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 (D. Minn. May 21, 2025) (concluding § 1003.19(i)(2) creates a substantial risk of erroneous deprivation of a detainee's interest in being free from arbitrary confinement).

Both facially and as applied, the risk of erroneous deprivation of a noncitizen's liberty interest when DHS invokes the automatic stay is extraordinarily high for a few reasons. First, the text of the regulation provides no identifiable standard that would guide any purported due process procedures. See 8 C.F.R. § 1003.19(i)(2). The regulation simply states that it may be invoked "[i]n any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more." Id. Such an undefined and subjective standard clearly creates a likelihood of arbitrary and capricious application. Second, the likelihood of the erroneous deprivation is also high because the automatic stay is generally invoked only after an IJ has already granted release to an individual based on a finding that the alien has established by clear and convincing evidence

1    that they are not a flight risk or a danger to the community.  As such, the stay is effectively a

2    unilateral automatic stay pending appeal as of right afforded to the losing party—the agency

3    official who has just failed to present evidence or argument sufficient to convince a neutral

4    decisionmaker that detention is warranted. Moreover, the regulation facially provides no

5    discernable process or standard to guide the relevant agency official's decision to enact the

6    automatic stay, other than the vague requirement that the stay be warranted under the facts and

7    law. The Court finds this unchecked power vested in DHS to prolong an individual's detention

8    cannot in any circumstance be a "carefully limited exception" to an individual's right to liberty as

9    required by the Due Process Clause. See Salerno, 481 U.S. at 755.

10         Further, this unilateral stay stands in contrast to the ordinary requirements of overriding a

11   judge's order pending appeal, which requires a showing of, *inter alia*, a likeliness of success on

12   the merits of the appeal and irreparable injury in the absence of a stay. See Nken v. Holder, 556

13   U.S. 418, 426 (2009). The Court thus finds the automatic stay presents a conflict of interest in

14   conferring unreviewable discretionary authority in the same prosecuting agency official that makes

15   erroneous deprivation not just a risk, but likely. See e.g., Günaydin, 2025 WL 1459154 at *8 ("the

16   challenged regulation permits an agency official who is also a participant in the adversarial process

17   to unilaterally override the immigration judge's decisions . . . [and] is anomalous in our legal

18   system . . .); Zavala v. Ridge, 310 F.Supp.2d 1071, 1078  (N.D. Cal. 2004) (holding the automatic

19   stay creates a serious risk of error because it conflates the functions of adjudicator and prosecutor);

20   Ashley v. Ridge, 288 F. Supp. 2d 662, 670–71 (D.N.J. 2003) ("the automatic stay provision . . .

21   was enacted precisely to avoid the need for. . . individualized determination[s]. Aliens like

22   Petitioner can consequently remain in detention no matter how frivolous the appeal by the

23   Government."); Reynosa Jacinto v. Trump, 4:25-cv-03161-JFB-RCC at *7 (D. Neb. August 19,

24   2025) (same).

25         With regards to the probable value of additional procedure, it is not difficult to conclude

26   that *any* additional procedure is valuable where, as here, the only procedure required for continued

27

28

detention appears to be an agency official checking a box and filing a form.[6] Moreover, the regulation itself contemplates alternative avenues to stay an IJ's bond release order that require review by the BIA on an expedited basis. 8 C.F.R. § 1003.19(i)(1) allows DHS to request an emergency stay of the IJ's custody determination by appealing to the BIA, which then conducts a preliminary review based on the individual circumstances of the detainee and merits of the case. "This process cures the due process infirmities of § 1003.19(i)(2) while preserving the government's interest in preventing an erroneous release." Günaydin, 2025 WL 1459154, at *9; Reynosa Jacinto, 4:25-cv-03161-JFB-RCC at *7. Accordingly, the second Mathews factor also weighs heavily in favor of granting the Petition.

### 3.  The Government's Interest and Burden of Additional Process

The third and final Mathews factor considers, the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. While the Respondents make no argument regarding the Mathews test or the automatic stay in particular, Respondents assert that the Government's broad interest in steady enforcement of immigration laws and preserving the BIA's authority without judicial intervention warrants denying the Petition. The Court acknowledges that the Government's interests in "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal" are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. The Court finds, however, that these interests are in fact protected by mandatory detention authority under Section 1225 and the individualized determination by an IJ pursuant to a heightened standard whether an individual should be granted bond at all under Section 1226. So, in failing to articulate any reason why detaining noncitizens who have prevailed at a bond hearing

---

[6] While the regulation requires a certification made by the Secretary of DHS that sufficient factual and legal bases exist to justify continued detention, see 8 C.F.R. § 1003.6(c), Respondents have presented no evidence, other than an oral representation at the hearing, that such a certification exists as to these Petitioners. The record here, and the continued delay by Respondents in providing the requisite certification, demonstrates the inefficacy of this requirement in practice, and further provides *a separate and independent basis* for ordering Petitioners released, because Respondents have failed to establish the requirements for invoking the automatic stay have been satisfied even on the regulation's own terms.

1   is necessary to enforcing immigration law, the question arises "whether the detention is not to

2   facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for

3   other reasons." Demore v. Kim, 538 U.S. 510, 532–33 (2003) (Kennedy, J., concurring). Further,

4   Respondents can continue to preserve the BIA's authority and limit the necessity of judicial

5   intervention by using existing regulatory procedures to seek an emergency stay from the BIA, as

6   discussed above. Finally, the use of already existing alternate procedures cannot be construed as a

7   fiscal or administrative burden on the Government as such alternative procedures exist and are

8   familiar to the Government.

9          Accordingly, the third factor also demonstrates the automatic stay regulation violates the

10  procedural due process rights of noncitizen detainees, both facially and as applied. The Court finds

11  the automatic stay regulation to be facially unconstitutional because it lacks any reference to or

12  establishment of any procedure for challenging its invocation. The Court finds that there can be no

13  possible application of this regulation that would satisfy due process where it purports to authorize

14  the most severe and recognized deprivation of liberty without a hint of a process to challenge such

15  deprivation. In contrast, as the Supreme Court in Demore highlighted in upholding the mandatory

16  detention of a noncitizen convicted of a crime under § 1226(c), "process" has been built into that

17  mandatory detention scheme. For example, § 1226(c) applies to detainees whose convictions were

18  generally "obtained following the full procedural protections [the] criminal justice system offers."

19  Demore, 538 U.S. at 513; id. at 525 n.9 (noting that "respondent became 'deportable' under §

20  1226(c) only following criminal convictions that were secured following full procedural

21  protections"). And if mandatory detention becomes unnecessarily prolonged in that context, the

22  due process' prohibition of arbitrary government detention could entitle a detainee "to an

23  individualized determination as to his risk of flight and dangerousness if the continued detention

24  became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). Detention pursuant to

25  the automatic stay after the government already failed to establish a justification for it, with no

26  process afforded to challenge the detention as arbitrary, is facially violative of procedural due

27  process.

28         The Court further finds that application of the automatic stay violates due process as

1    applied to the Petitioners in this case.  The Petitioners were granted release at a bond hearing where

2    the Government presented no specific evidence of why the respective Petitioners should be

3    detained. The IJ in each of the Petitioners' hearings found by clear and convincing evidence that

4    release should be granted pursuant to bond conditions. And in each case the Government invoked

5    the automatic stay unilaterally without offering a word of justification for their detention after

6    being ordered released, and without offering any procedure for challenging the automatic stay.

7    Where, as here, a noncitizen is detained without any process for challenging that detention, this

8    violates due process. See e.g., Rodriguez v. Marin, 909 F.3d 252, 256-57 (9th Cir. 2018)

9    ("[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited

10    exception.") (quoting Salerno, 481 U.S. at 755).

11           ii.   *Substantive Due Process*

12           Government detention violates the Due Process Clause unless it is ordered in a criminal

13    proceeding with adequate procedural protections, or in non-punitive circumstances "where a

14    special justification . . . outweighs the individual's constitutionally protected interest in avoiding

15    physical restraint." Zadvydas, 533 U.S. at 690. Further, noncitizens like Petitioners have a

16    "weighty" liberty interest in in their right to "live and work in this land of freedom," which they

17    have each peacefully enjoyed for decades. Landon v. Plasencia, 459 U.S. 21, 34 (1982).

18           As applied,[7] the regulation at issue, which has permitted unilateral government detention

19    of Petitioners without a case-by-case determination, after a reasoned finding based on clear and

20    convincing evidence that they do not pose a threat to safety or a risk of flight, violates substantive

21    due process because the Government has asserted no special justification that outweighs

22    Petitioners' constitutionally protected liberty interest. Indeed, Respondents here have not

23    articulated *any* interest—let alone a compelling interest—to justify invoking the automatic stay

24    provision and have thereby failed to even follow the due process within the automatic stay

25    _____

26           [7] Because C.F.R. § 1003.6(c) requires the Secretary of DHS to certify factual and legal
     circumstances exist to justify continued detention, the Court is not prepared to find there is *no* set
27    of circumstances where the Government might have a special justification to stay an IJ's bond
     order sufficient to satisfy a detainee's substantive due process rights. The Court's finding that the
28    regulation violates Petitioners' substantive due process rights is therefore limited to their as applied
     challenge.

- 21 -

provision itself. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioners are currently detained in violation of their substantive due process rights.

Because the Court finds the automatic stay regulation at § 1003.19(i)(2) violates procedural due process both facially and as applied, and substantive due process as applied, the Court grants the Writ of Habeas Corpus and orders Petitioners immediate release pursuant to the IJs' custody redeterminations.

## V.    CONCLUSION

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY ORDERED** that Petitioners First Amended Petition for Writ of Habeas Corpus (ECF No. 17) is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly and close this case.

**DATED:** September 5, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**